# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Marlene M.,

        Plaintiff,

v.

Nancy Berryhill,
Acting Commissioner of Social Security,

        Defendant.

Case No. 18-cv-258 (TNL)

**ORDER**

Jacob P. Reitan, Reitan Law Office, Grandview Office Park, 1454 White Oak Drive, Chaska, MN 55318 (for Plaintiff); and

Michael Moss, Special Assistant United States Attorney, Social Security Administration, Office of the General Counsel, Region VI, 1301 Young Street, Suite A702, Dallas, TX 75202 (for Defendant).

## I. INTRODUCTION

Plaintiff Marlene M. brings the present case, contesting Defendant Commissioner of Social Security's partially favorable decision on her applications for disability insurance and disabled widow's benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income under Title XVI of the same, 42 U.S.C. § 1381 *et seq.* The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

This matter is before the Court on the parties' cross-motions for summary judgment. (ECF Nos. 14, 17.) Being duly advised of all the files, records, and proceedings herein, **IT**

**IS HEREBY ORDERED** that Plaintiff's motion for summary judgment (ECF No. 14) is **GRANTED IN PART** and **DENIED IN PART**; the Commissioner's motion for summary judgment (ECF No. 17) is **DENIED**; and this matter is remanded for further proceedings.

## II. PROCEDURAL HISTORY

Plaintiff applied for benefits asserting that she has been disabled since July 14, 2014 due to liver disease, diabetes, depression, pain, and obesity. (Tr. 20, 90, 105, 121.) Plaintiff's applications were denied initially and again upon reconsideration. (Tr. 20, 87-89, 103, 118, 134, 154, 172, 190, 192-94.) Plaintiff then appealed by requesting a hearing before an administrative law judge ("ALJ"). (Tr. 20, 219.)

The ALJ held a hearing in January 2017. (Tr. 20, 45, 47.) The ALJ issued a partially favorable decision, finding and concluding that Plaintiff became disabled on September 4, 2016. (Tr. 32.) Plaintiff subsequently requested review from the Appeals Council, which denied her request for review. (Tr. 1-5.) Plaintiff then filed the instant action, challenging the ALJ's decision. (Compl., ECF No. 1.) The parties have filed cross motions for summary judgment. (ECF Nos. 14, 17.) This matter is now fully briefed and ready for a determination on the papers.

## III. LEGAL ANALYSIS

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011). "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." *Id.* This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports

it." *Id.* The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); *accord* 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  In general, the burden of proving the existence of disability lies with the claimant.  20 C.F.R. §§ 404.1512(a), 416.912(a).

## A. Residual Functional Capacity

The sole issue in this case is the weight accorded to the opinion evidence regarding Plaintiff's ability to perform the physical exertional requirements of light work.[1]  A claimant's "residual functional capacity is the most [she] can do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *accord* 20 C.F.R. § 416.945(a)(1); *see McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) ("A claimant's [residual functional capacity] represents the most he can do despite the combined effects of all of his credible limitations and must be

---

[1]  At the end of her memorandum, Plaintiff states,

> [A]lthough the primary basis of our appeal is not based on [her] mental health, it is important to note that the [ALJ] gives similar discourteous treatment to the treating source opinions of [her] mental health providers.  In this matter, [her] three (3) mental health providers . . . offered opinions that [she] had marked level limitations in three of the three areas of relevant functioning that social security looks at when determining if someone meets a listing based on their mental health.  As before, the ALJ again assigns these three treating source opinions little weight and provides little in the way of explanation.

(Pl.'s Mem. in Supp. at 26-27, ECF No. 15.)  "Because Plaintiff did not connect the facts of the case to a particular listing, the argument is waived, and no further review by the court is required."  *Ollila v. Astrue*, No. 09-cv-3394 (JNE/AJB), 2011 WL 589037, at *11 (D. Minn. Jan. 13, 2011), *adopting report and recommendation*, 2011 WL 589588 (D. Minn. Feb. 10, 2011); *see Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) ("We reject out of hand Vandenboom's conclusory assertion that the ALJ failed to consider whether he met listings 12.02 or 12.05C because Vandenboom provides no analysis of the relevant law or facts regarding these listings.")  Nor has Plaintiff articulated how the mental portion of the ALJ's residual-functional-capacity determination would have been different if the ALJ had given greater weight to the opinions of her mental-health providers.  *See Hacker v. Barnhart*, 459 F.3d 934, 937 n.2 (8th Cir. 2006) ("A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." (quotation omitted)).

based on all credible evidence."). "Because a claimant's [residual functional capacity] is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Perks*, 687 F.3d at 1092 (quotation omitted). "Medical records, physician observations, and the claimant's subjective statements about h[er] capabilities may be used to support the [residual functional capacity]." *Id.* "Even though the [residual-functional-capacity] assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Id.* (quotation omitted); *see* 20 C.F.R. §§ 404.1546(c), 416.946(c).

### B. Physical Exertional Requirements: Light & Sedentary Work

Under the regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); *accord* 20 C.F.R. § 416.967(b) (same).

And, under the regulations,

> [s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); *accord* 20 C.F.R. § 416.67(a) (same).

### C. Opinion Evidence

#### 1. Treating Physicians

##### a. Dr. Monsein

Plaintiff began seeing Matthew Monsein, MD, in 2014 in connection with pain management and rehabilitation.[2] (Tr. 648, 867, 1072, 1790.) Plaintiff completed a three-week pain program in December 2014. (Tr. 867; *see, e.g.*, Tr. 804-05, 834-50.) On December 29, 2014, Dr. Monsein completed a residual functional capacity questionnaire. (Tr. 867-71.) Dr. Monsein listed Plaintiff's diagnoses as fibromyalgia and osteoarthritis. (Tr. 867.) Dr. Monsein included diffuse pain among Plaintiff's symptoms and diffuse tenderness in the clinical findings. (Tr. 867.) Dr. Monsein described Plaintiff's condition as "a permanent situation." (Tr. 867.)

Dr. Monsein opined that Plaintiff could sit for 45 to 60 minutes at a time, and for 4 to 6 hours total in an 8-hour day. (Tr. 868, 870; *see* Tr. 1076.) Dr. Monsein opined that Plaintiff could stand for 15 to 20 minutes at a time, and for a total of 1 to 2 hours in an 8-hour day. (Tr. 868, 870; *see* Tr. 1076.) Plaintiff was able to walk for a total of 1 to 2 hours in an 8-hour day. (Tr. 870; *see* Tr. 1076.) Plaintiff could occasionally lift and carry up to 10 pounds. (Tr. 871; *see* Tr. 1077.)

During follow-up appointments in 2015 and 2016, Dr. Monsein noted that he "had previously completed functional restrictions indicating that if [Plaintiff] were to return to

---

[2] While Plaintiff states that Dr. Monsein has "treated [her] from the mid-1980s to the present," (Pl.'s Mem. in Supp. at 21), the initial consultation is dated August 29, 2014. (Tr. 1072; *see* Tr. 648, 867, 1790.) The reference to the "1980s" may be from Dr. Monsein's notes which indicate that Plaintiff's "symptoms began in 1980 when she was involved in a car accident." (Tr. 1072; *see* Tr. 648, 911.)

work she would need to find a sedentary employment." (Tr. 918; *accord* Tr. 988, 995, 1000; *see* Tr. 1068.) Dr. Monsein further noted that Plaintiff had not worked since 2014 and "in [his] opinion it is highly unlikely that she will ever be able to return to any type of sustained gainful employment." (Tr. 918; *accord* Tr. 988-89, 995, 1000; *see also* Tr. 1071.) Lastly, Dr. Monsein noted that he "told [Plaintiff] that [he] would be glad to talk with her attorney regarding her disability issues." (Tr. 918; *accord* Tr. 989, 995, 1000.)

In August 2016, Dr. Monsein completed another medical opinion form. (Tr. 908-11.) Dr. Monsein opined that Plaintiff could frequently carry less than 10 pounds and occasionally carry 10 pounds. (Tr. 908.) Plaintiff could stand or walk for 2 hours in an 8-hour day, and sit for 4 hours. (Tr. 908.) Dr. Monsein opined that Plaintiff would "[n]eed to change positions frequently," and required the ability to shift positions at will. (Tr. 908-09.) Plaintiff could sit for 30 minutes and stand for 10 minutes before needing to change positions. (Tr. 909.) Plaintiff needed to walk around every 20 to 30 minutes. (Tr. 909.) Plaintiff would also occasionally need to lie down. (Tr. 909.) Dr. Monsein opined that Plaintiff's conditions would cause her to be absent from work approximately 3 times per month and that these limitations were "permanent." (Tr. 911.) Dr. Monsein estimated that these symptoms and limitations were present since the "1980's." (Tr. 911.)

### b.    Dr. Santilli

Plaintiff established care with Jamie D.T. Santilli, MD, in early 2013. (Tr. 1086-92; *see* Tr. 1684-88.) Dr. Santilli diagnosed Plaintiff with fibromyalgia and arthritis, among other things, and referred her to a pain management center. (Tr. 1090.)

In September 2016, Dr. Santilli completed a medical opinion form regarding Plaintiff's physical abilities. (Tr. 1169-72.) Dr. Santilli opined that Plaintiff was able to lift and carry less than 10 pounds both occasionally and frequently. (Tr. 1169.) Dr. Santilli opined that Plaintiff was able to stand for approximately 2 hours in an 8-hour day, and sit for 2 hours in an 8-hour day. (Tr. 1169.)

Like Dr. Monsein, Dr. Santilli also opined that Plaintiff needed the ability to shift positions at will. (Tr. 1170.) Plaintiff could both sit and stand for 20 to 30 minutes before needing to change positions. (Tr. 1170.) Plaintiff needed to walk around every 20 to 30 minutes, which Dr. Santilli noted was "limited by pain." (Tr. 1170.) Dr. Santilli opined that Plaintiff would also occasionally need to lie down. (Tr. 1170.)

Dr. Santilli stated that these limitations were supported by "multiple physical therapy sessions without improvement" and MRIs of Plaintiff's back. (Tr. 1170.) Elsewhere, Dr. Santilli noted that Plaintiff had "[i]mpairment related to physical and mental disabilities[, d]epression," and that Plaintiff required a personal care assistant ("PCA") "to assist [with] daily activities." (Tr. 1171.)

Dr. Santilli opined that Plaintiff's conditions would cause her to be absent more than 3 times per month, and that these were "life long symptoms[,] expected to worsen." (Tr. 1172.) Dr. Santilli estimated that Plaintiff's "symptoms began in 2014 causing limitations." (Tr. 1172.)

### c.    Dr. Kapella

Plaintiff established care with Kasey L. Kapella, MD, in June 2014. (Tr. 676.) Among other things, Dr. Kapella has treated Plaintiff for neck pain and fibromyalgia. (Tr.

579-80, 679-80, 801; *see* Tr. 873-74.)  Dr. Kapella referred Plaintiff to Dr. Monsein.  (Tr. 648; *see* Tr. 580.)

In December 2014, Dr. Kapella completed a residual functional capacity questionnaire for Plaintiff.  (Tr. 801-03; *accord* Tr. 1781-83.)  Dr. Kapella included fibromyalgia among Plaintiff's diagnoses and described her prognosis as "poor."  (Tr. 801; *accord* Tr. 1781.)  Among other symptoms, Dr. Kapella noted chronic back, neck, leg, and foot pain.  (Tr. 801; *accord* Tr. 1781.)

Dr. Kapella opined that Plaintiff could sit for approximately 20 to 30 minutes at a time, and stand for 20 minutes at a time.  (Tr. 802; *accord* Tr. 1782.)  Dr. Kapella opined that Plaintiff could occasionally carry less than 10 pounds and never carry 10 or more pounds.  (Tr. 802; *accord* Tr. 1782.)

Dr. Kapella also opined that Plaintiff would need to sit in a recliner or lay down for 3 to 4 hours per day.  (Tr. 802; *accord* Tr. 1782.)  Dr. Kapella additionally estimated that Plaintiff would need to take more than 8 unscheduled breaks during the day.  (Tr. 802; *accord* Tr. 1782.)  According to Dr. Kapella, Plaintiff would be absent from work more than 4 times per month.  (Tr. 802; *accord* Tr. 1782.)

### d.    Dr. Klingelhoets

Plaintiff saw Jesse J. Klingelhoets, MD, at least twice in 2016 with regards to disability paperwork.  (Tr. 2529.)  In August 2016, Dr. Klingelhoets completed a medical opinion form regarding Plaintiff's physical abilities.  (Tr. 898-901, 1137-40.)  Dr. Klingelhoets opined that Plaintiff should lift and carry less than 10 pounds both occasionally and frequently.  (Tr. 898, 1137.)  Plaintiff could sit for 2 hours total in an 8-

hour day, and for 20 to 30 minutes at a time before needing to change positions. (Tr. 898-99, 1137-38.) Plaintiff was able to stand and walk for a total of 2 hours in an 8-hour day. (Tr. 898, 1137.) Plaintiff could stand for 20-30 minutes before needing to change positions. (Tr. 899, 1138.) Dr. Klingelhoets noted that Plaintiff needed to walk around approximately every 20 to 30 minutes, but was "often unable to due to pain." (Tr. 899; *accord* Tr. 1138.)

Dr. Klingelhoets further opined that Plaintiff needed to be able to shift positions at will and would need to lie down occasionally. (Tr. 899, 1138.) Dr. Klingelhoets wrote "unpredictable" when asked how many times Plaintiff might need to lie down. (Tr. 899; *accord* Tr. 1138.)

When asked about the findings supporting these limitations, Dr. Klingelhoets stated they were based on "failed multiple attempts at physical therapy" and MRIs of Plaintiff's back. (Tr. 899; *accord* Tr. 1138.) Elsewhere, Dr. Klingelhoets noted that Plaintiff requires a PCA to assist with activities of daily living and referenced an occupational therapy evaluation. (Tr. 900, 1139.)

Dr. Klingelhoets answered "current" when asked about the earliest date of Plaintiff's symptoms and limitations. (Tr. 901; *accord* Tr. 1140.) Dr. Klingelhoets opined that Plaintiff's limitations were "ongoing" and "indefinite[]." (Tr. 901; *accord* Tr. 1140.) Dr. Klingelhoets estimated that Plaintiff would be absent from work more than 3 times per month. (Tr. 901, 1140.)

### 2. State Agency Medical Consultants

The state agency medical consultants both opined that Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. (Tr. 98, 113, 128, 148,

166, 184.)  Plaintiff could stand and walk for 6 hours in an 8-hour day as well as sit for 6 hours in an 8-hour day.  (Tr. 98, 113, 128, 148, 166, 184-85.)  No postural limitations were identified.  (Tr. 98, 113, 128, 148, 166, 185.)

### 3.  Medical Expert

At the hearing before the ALJ, Andrew M. Steiner, MD, testified as the medical expert.  (Tr. 20, 45, 70, 2527-28.)  Dr. Steiner described this case as "[p]rimarily . . . a pain case."  (Tr. 73.)  Dr. Steiner noted that "[d]iffuse pain in the areas of the body is involved," (Tr. 73), including "generalized pain, back and neck and all the extremities,"  (Tr. 71). When discussing the impairments reflected in the record, Dr. Steiner noted, among other things, chronic pain syndrome, fibromyalgia, degenerative disc disease, and spinal stenosis.  (Tr. 71; *see* Tr. 73, 76.)  Dr. Steiner observed that Plaintiff had been diagnosed with fibromyalgia back in 2013 and has "had multiple treatments for this over the years." (Tr. 71.)

When asked by the ALJ about the physical limitations he would impose based on the record, Dr. Steiner testified:

> Well, as mentioned the problem is primarily one of pain. The objective findings are not great.  She's generally neurologically in[tact] . . . as far as her upper and lower extremities.  Range of motion is not compromised greatly.
>      Her gait has been described as normal.  So I think the record mainly on that basis would point to a light residual as far as lifting and time on feet.

(Tr. 73; *see* Tr. 76.)   Dr. Steiner then proceeded to describe additional postural, manipulative, and environmental limitations.  (Tr. 74.)

On cross examination, Plaintiff's counsel asked Dr. Steiner if he was taking into account Plaintiff's pain. (Tr. 76.) Dr. Steiner responded, "I am, but mainly I'm looking at the record and noting that consistently she's said to have normal strength, normal sensation, [and] normal range of motion . . . ." (Tr. 76.) Plaintiff's counsel asked whether strength was impacted by pain. (Tr. 76.) Dr. Steiner testified, "No, the effort can be impacted by pain," and again noted that Plaintiff's "doctors don't feel that she's really lacking strength." (Tr. 76.)

Dr. Steiner additionally testified that he was "considering pain, the pain we normally expect from this kind of physical picture." (Tr. 76.) Dr. Steiner continued:

> And, therefore, it's really a credibility issue the judge is going to have to deal with because I have to look at the objective findings in the record as to what her limitations would be based on those things. I can listen to the pain reports, but I have to also consider the objective findings.

(Tr. 76; *see* Tr. 78-79.)

Dr. Steiner acknowledged there were "multiple assessments in here indicating that . . . she was capable of less than sedentary work." (Tr. 77; *see* Tr. 76.) Dr. Steiner testified that these opinions were "all based on pain reports." (Tr. 77; *see* Tr. 76.)

### 4. Vocational Expert

At the hearing, Plaintiff's counsel asked the vocational expert about tolerated absences. (Tr. 82.) The vocational expert "testif[ied] that if somebody misses more than two days of work per month, that would include missing a complete day, coming in late, leaving early, any combination of those three, that it would exceed two times per month would preclude competitive employment." (Tr. 82.)

### D. ALJ's Decision

The ALJ found and concluded that Plaintiff had the severe impairments of "fibromyalgia; obesity; history of carpal tunnel surgeries/wrist pain/osteoarthritis of the hands; degenerative disc disease of the cervical spine; chronic pain syndrome; diabetes mellitus type 2; asthma; major depressive disorder; and anxiety." (Tr. 23 (citations omitted).) The ALJ further found and concluded that none of Plaintiff's impairments when considered individually or in combination met or equaled listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23-25.)

The ALJ next found and concluded that Plaintiff had the residual functional capacity to perform light work with additional limitations not relevant to the instant motions. (Tr. 25.) When determining Plaintiff's residual functional capacity, the ALJ considered opinions regarding Plaintiff's physical limitations from the four treating physicians identified above, two state agency medical consultants, and Dr. Steiner. (Tr. 27, 30.) The ALJ gave "little weight to the various opinions of . . . [Plaintiff's] treating physicians indicating that she is limited to work at a sedentary or less than sedentary level." (Tr. 30.) The ALJ gave "[g]reater weight" to the testimony of Dr. Steiner. (Tr. 30.) And, the ALJ gave "great weight . . . to the assessments of the [s]tate [a]gency medical consultants." (Tr. 30.)

After taking into account Plaintiff's age, education, work experience, and residual functional capacity, the ALJ ultimately determined that Plaintiff was disabled as of September 4, 2016, based on an age-category change. (Tr. 31.) Prior to September 4, 2016, however, the ALJ found and concluded that Plaintiff was able to perform the

representative jobs of mail clerk and production assembler based on the testimony of the vocational expert, and therefore was not disabled before that date. (Tr. 32, 81.)

### E. Weighing of the Opinion Evidence

Plaintiff argues that the ALJ did not properly weigh the opinions of her treating physicians in determining her residual functional capacity. There is no dispute that Drs. Monsein, Santilli, Kapella, and Klingelhoets are acceptable medical sources who treated Plaintiff. *See* 20 C.F.R. §§ 404.1502(a)(1) (identifying licensed physicians as acceptable medical sources), 416.902(a)(1) (same), 404.1527(a)(2) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."), 416.927(a)(2) (same). Each of these treating physicians opined that Plaintiff was limited to performing work at or below the sedentary level.

"A treating physician's opinion is entitled to controlling weight when it is supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016); *accord Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). "Yet[, this controlling] weight is neither inherent nor automatic and does not obviate the need to evaluate the record as a whole." *Cline*, 771 F.3d at 1103 (citation and quotation omitted). The opinions of treating physicians "are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004); *see Cline*, 771 F.3d at 1103 (permitting the opinions of treating physicians to be discounted or disregarded "where

14

other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions" (quotation omitted)). When a treating physician's opinion is not given controlling weight, the opinion is weighed based on a number of factors, including the examining relationship, treatment relationship, opinion's supportability, opinion's consistency with the record as a whole, specialization of the provider, and any other factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003). The ALJ is required to "give good reasons" for the weight assigned to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2); *accord* 20 C.F.R. § 416.927(c)(2); *see Cline*, 771 F.3d at 1103.

The ALJ acknowledged that Drs. Monsein, Santilli, Kapella, and Klingelhoets had opined that Plaintiff was limited to performing work at or below the sedentary level. The ALJ gave these opinions "little weight," and stated that "[c]onsidering these assessments of chronic pain, in the context of the overall record, along with consideration of the symptoms of depression and anxiety, . . . the overall record does not support limitations beyond those set forth in the residual functional capacity." (Tr. 27.)

The ALJ gave greater weight to Dr. Steiner and his testimony at the hearing "as the objective medical findings are consistent with his assessment, and the consideration of the overall record . . . does not support the need for further reduction in the residual functional capacity." (Tr. 30.) The ALJ also gave "great weight" to the state agency medical consultants "as the evidence received since the time of those determinations is consistent

with and supports the light residual functional capacity and the limitations as set forth above." (Tr. 30.)

It is not clear to this Court the reasons for which the ALJ assigned little weight to the opinions of Drs. Monsein, Santilli, Kapella, and Klingelhoets. The Commissioner contends that "the ALJ found these opinions were inconsistent with the objective medical findings." (Def.'s Mem. in Supp. at 11, ECF No. 18.) An ALJ may assign less weight to a treating physician's opinion when that opinion is not supported by objective medical evidence. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); *see, e.g.*, *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (ALJ properly discounted opinion of treating physician where opinion "contrast[ed] sharply with the other evidence of record, and [was]s without substantial support from the other evidence of record," noting claimant's "medical reports revealed, among other things, that he had normal 5/5 motor strength in all extremities, his acuity seemed normal, his reflexes and fine fingering were normal, and he reported feeling fine"); *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (no error in "minimal weight" assigned to treating neurologist's opinion where "the significant limitations [neurologist] expressed in his evaluation are not reflected in any treatment notes or medical records"). Likewise, an ALJ may properly discount a treating physician's opinion when it is based largely on a claimant's subjective complaints rather than objective medical evidence. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007); *accord Cline*, 771 F.3d at 1104.

Here, while the ALJ expressly found and concluded that Dr. Steiner's opinion was consistent with the objective evidence, the ALJ did not expressly state that the opinions of Drs. Monsein, Santilli, Kapella, and Klingelhoets were inconsistent with the objective

medical evidence. By implication, it would seem then that the ALJ determined that the opinions of Plaintiff's treating physicians were not consistent. Yet, while the ALJ discussed various findings from physical examinations, it is not apparent to this Court what, in particular, led the ALJ to conclude that Plaintiff was capable of lifting/carrying 20 pounds occasionally and 10 pounds frequently when her treating physicians nearly universally opined that she should be limited to less than 10 pounds overall. Similarly, it is not apparent to this Court what, in particular, led the ALJ to conclude that Plaintiff was capable of standing/walking for 6 hours in an 8-hour day when her treating physicians most often limited her to 2 hours. Likewise, it is not apparent to this Court what, in particular, led the ALJ to conclude that Plaintiff was capable of sitting for 6 hours in an 8-hour day when her treating physicians most often opined that she could sit between 2 to 4 hours.

A comparison to the ALJ's discussion of the opinion evidence with respect to Plaintiff's mental limitations is illustrative. When discussing the weight assigned to three additional treating sources concerning Plaintiff's mental limitations, the ALJ reasoned that while these sources opined that Plaintiff's "depression and anxiety prevent[ed] . . . [her] from meeting the demands of unskilled competitive work[,]" their opinions were "inconsistent with the mental status observations . . . , which reflect little apart from depressed mood and affect that is being treated with medications." (Tr. 30.) The ALJ went on to state that "[t]he limitations in the residual functional capacity for unskilled work with brief and superficial contact . . . accommodate the findings described by the mental health providers." (Tr. 30.) There is no analogous discussion with respect to the objective

medical evidence; the physical limitations identified by Drs. Monsein, Santilli, Kapella, and Klingelhoets; and the ALJ's residual-functional-capacity determination.

Similarly, while the vocational expert testified that an employer generally tolerates approximately 2 missed days of work per month, Drs. Monsein, Santilli, Kapella, and Klingelhoets each opined that Plaintiff would miss approximately 3 or more days of work per month. *See, e.g.*, *McCoy*, 648 F.3d at 617 (residual functional capacity "determination must be based on a claimant's ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world" (quotation omitted)); *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004) (same).

Further, the only opinions that Plaintiff was capable of performing light work came from nonexamining medical sources: the state agency medical consultants and the medical expert. *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). "[T]he opinions of nonexamining sources are generally given less weight than those of examining sources." *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) (quotation omitted).

The Commissioner suggests that less weight was given to the opinions of Drs. Monsein, Santilli, Kapella, and Klingelhoets because the ALJ did not find and conclude that Plaintiff's subjective complains were as intense, persistent, and limiting as she alleged. Plaintiff has not challenged the ALJ's determination with respect to her subjective complaints. "[A]n ALJ need not give a treating physician's opinion controlling weight when the opinion is based on a claimant's subjective complaints that [the] ALJ does not find credible." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017); *accord Julin*, 826

F.3d at 1089. But, it is not clear from the ALJ's decision that the opinions of Drs. Monsein, Santilli, Kapella, and Klingelhoets were given reduced weight on this basis, or, relatedly, that the ALJ determined these opinions contained greater limitations than Plaintiff actually exhibited in her daily living. *See Anderson*, 696 F.3d at 794.

Lastly, the ALJ stated that the opinions of Drs. Monsein, Santilli, Kapella, and Klingelhoets were considered " in the context of the overall record." (Tr. 27; *see* Tr. 26 ("after considering the record as a whole").) The regulations require the ALJ to consider how consistent a medical opinion is with the record as a whole. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). And, an ALJ properly discounts the opinions of a treating physician when such opinions are "contradicted by or inconsistent with other evidence in the record." *Howe v. Astrue*, 499 F.3d 835, 841 (8th Cir. 2007); *accord Julin*, 826 F.3d at 1088 (opinions of treating physicians "may be given limited weight if they are . . . inconsistent with the record"). But, it is not clear to this Court what aspects of these opinions the ALJ viewed to be inconsistent with the record as a whole.

The Court recognizes that "[a] claimant's [residual functional capacity] is based on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Boyd v. Colvin,* 831 F.3d 1015, 1020 (8th Cir. 2016) (quotation omitted). "[T]here is no requirement that [a residual-functional-capacity] finding be supported by a specific medical opinion." *Hensely v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Thus, "[e]ven though the [residual-functional-capacity] assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614,

619 (8th Cir. 2007); *see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).  As such, it is the ALJ, not a physician, who determines a claimant's residual functional capacity.  *Boyd*, 831 F.3d at 1020.

In the end, it is the duty of the ALJ to "resolve conflicts among the various opinions."  *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009); *see also Kirby*, 500 F.3d at 709 ("It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians.").  There may well be good reasons for not according the opinions of Drs. Monsein, Santilli, Kapella, and Klingelhoets controlling weight, and giving greater weight to Dr. Steiner and the state agency medical consultants.  But, the ALJ must explain the reasons for and basis upon which the opinion(s) of a treating physician (and here there are four) were discounted sufficient for a reviewing court to determine whether the ALJ took into account the appropriate factors when considering the opinion evidence and whether the ALJ's rationale—and ultimately the residual-functional-capacity determination—is supported by substantial evidence in the record as a whole.  *See Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." (quotation omitted)).  The Court is not able to do so here, and remand is required.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

# IV. ORDER

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY**

**ORDERED** that:

1. Plaintiff's Motion for Summary Judgement (ECF No. 14) is **GRANTED IN PART** and **DENIED IN PART**.

2. The Commissioner's Motion for Summary Judgment (ECF No. 17) is **DENIED**.

3. This matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March_____27____, 2019                    _____*s/ Tony N. Leung*_____
                                                  Tony N. Leung
                                                  United States Magistrate Judge
                                                  District of Minnesota


                                                  *Marlene M.  v. Berryhill*
                                                  Case No. 18-cv-258 (TNL)